IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERONIMO F. ROSADO, JR., *Plaintiff,* v. MICHAEL P. DUGAN, et al., *Defendants.* | CIVIL ACTION NO. 19-5068 |

**PAPPERT, J.** January 11, 2022

### MEMORANDUM

*Pro se* Plaintiff Geronimo Rosado Jr. has challenged the Court in this civil rights case with a number of filings that are often confusing, disorganized and difficult to understand. His initial complaint was dismissed without prejudice because it did not comply with Federal Rule of Civil Procedure 8. In allowing amendment, the Court provided guidance on how Rosado could correct his pleading's deficiencies. (ECF 4; ECF 5.) The amended complaint was unfortunately no better. The Court nonetheless granted Rosado leave to file a second amended complaint, with more specific instructions on how to draft a document that could satisfy Rule 8. (ECF 7; ECF 8.)

Rosado's Second Amended Complaint still leaves much to be desired. The allegations in the document (ECF 9), taken alone or construed with a filing that appears to be a supplement (ECF 10), remain difficult to follow and include extraneous, sometimes bizarre ramblings. With two exceptions, to the extent the Court can interpret them liberally enough to get past Rule 8, they cannot survive Rule 12(b)(6). The Court accordingly grants in part and denies in part the motion to dismiss filed on behalf of Pennsylvania State Police troopers Michael Dugan, Reginald Rawls and Codi

1

Simcox and dismisses most of the claims against them with prejudice. Further amendment at this point would be futile.

I

The case's procedural history is described in the Court's January 3, 2022 memorandum. (ECF 31 at 1–3.) Rosado filed his Second Amended Complaint on July 22, 2020. (ECF 9.) It names as defendants in their individual capacities PSP Troopers Dugan, Rawls and Simcox ("Trooper Simcox"), West Chester Police Officer Simcox ("Officer Simcox") and former Pennsylvania Transportation Secretary Leslie Richards.[1] (Second Am. Compl. 1.)

As best the Court can tell, Rosado contends Dugan and Rawls falsely arrested and maliciously prosecuted him after pulling him over in July of 2017, and that Trooper Simcox and Officer Simcox aided that prosecution by wrongly stopping him to secure evidence on separate occasions the following year. Specifically, Rosado alleges that on July 21, 2017 Dugan and Rawls pulled him over and arrested him. (*Id.* at ¶¶ 6, 16.) Although Dugan stated he made the stop because Rosado was speeding and failed to maintain lanes, Rosado claims he did neither. (*Id.* at ¶¶ 7–8.) He was eventually arrested for driving under the influence even though he passed sobriety and breathalyzer tests, was "not under any substance or things" and, contrary to Dugan's

---

[1] Richards has not been served. Even if she had, Rosado's claims against her would fail. He alleges she is "legally responsible" for the enforcement of unconstitutional statutes against him. *See* (Second Am. Compl. 3, 18–20). But a § 1983 defendant "must have personal involvement in the alleged wrongs" and cannot be held liable "solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (explaining § 1983 plaintiffs must allege "each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Rosado does not allege "personal direction" or "actual knowledge and acquiescence" from Richards. *Rode*, 845 F.2d at 1207. Moreover, although Officer Simcox has been served (ECF 13), he did not join in the PSP troopers' Motion to Dismiss or otherwise respond. The Court does not address Rosado's claims against him.

claims, there was no marijuana odor coming from his car and clothes. (*Id.* at ¶¶ 7–9, 11–15; Emerg. Pet. 8, ECF 10.)

According to Rosado, after he was later released from the PSP barracks, he went to the hospital for an evaluation, and a doctor deemed him alert and not intoxicated. (Second Am. Compl. ¶¶ 28–30; Emerg. Pet. 8.) Dugan filed an affidavit of probable cause on August 1. (Second Am. Compl. ¶ 32.) Rosado's case was dismissed without prejudice, but Dugan and Rawls "[r]einstated" charges. (*Id.* at ¶¶ 35–36.) A judge suppressed the "evidence Dismissing DUI/DWI," and the remaining charges were *nolle prossed*. (*Id.* at ¶ 41.)

Rosado alleges Officer Simcox and Trooper Simcox pulled him over in July and December of 2018, respectively. *See* (*id.* at ¶¶ 42, 44). Both issued Rosado citations for driving with his operating privileges suspended due to the July 2017 arrest. *See* (*id.* at ¶¶ 44, 51); 75 PA. Stat. and Cons. Stat. § 1543(b) (West 2021).

Rosado asserts eleven claims for relief. The first names all defendants and invokes 42 U.S.C. § 1983. (Second Am. Compl. 14.) The Court interprets the second claim as one for false arrest against Dugan and Rawls and third as a failure to intervene claim against Rawls. *See* (*id.* at 14–16). The fourth alleges malicious prosecution against Dugan, Rawls and Richards. (*Id.* at 16–18.) The fifth contends Dugan and Rawls, among other things, provided false police reports, committed perjury and tampered with evidence. (*Id.* at 18.) The sixth and seventh are statutory claims: the former names Dugan, Rawls and Richards and alleges Pennsylvania's vehicle code is unconstitutional; the latter contends all defendants violated the federal Driver's Privacy Protection Act. (*Id.* at 18–21.) The Court construes the eighth to allege

malicious prosecution and excessive force against all defendants. *See* (*id.* at 21–22). Claims nine through eleven are requests for attorneys' fees and over $9 million in damages. (*Id.* at 23–24.) Rosado also seeks an injunction and restraining orders but states he would settle the case within 120 days of Defendants receiving the Second Amended Complaint in exchange for $40,000, the reinstatement of his driver's license and a clean driving record. (*Id.* at 24–25.)

Rosado subsequently filed an "emergency petition" for a permanent injunction and restraining order that the Court construes as a supplement to the Second Amended Complaint. (ECF 10; Sept. 21, 2020 Order ¶ 3, n.2, ECF 11.) He claims police continue to illegally investigate and stop him—including in August and September of 2020—based on the July 2017 arrest. *See* (Emerg. Pet.).

Troopers Dugan, Rawls and Simcox moved to dismiss Rosado's claims against them. (ECF 18.) The Court construes two of Rosado's filings, ECF 25 and ECF 26, as responses to the Motion.

## II

### A

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded permit the Court to "draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Id.* If the "well-pleaded facts" do not allow the Court to "infer more than the mere possibility of misconduct, the complaint has alleged—but

it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When factual allegations are well-pleaded, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). But this presumption "attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). While the Court disregards a "pleading's legal conclusions," it assumes "all remaining factual allegations to be true, construe[s] those truths in the light most favorable to the plaintiff, and then draw[s] all reasonable inferences from them." *Connelly*, 809 F.3d at 790. Determining plausibility is a "context-specific task" that requires the Court to use its "judicial experience and common sense." *Schuchardt*, 839 F.3d at 347 (quoting *Connelly*, 809 F.3d at 786–87).

B

Section 1983 of Title 42 of the United States Code provides in part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." To state a § 1983 claim, a plaintiff must allege (1) the violation of a "right secured by the Constitution and laws of the United States" and (2)

5

the person who violated the right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Court must "apply the applicable law" in a § 1983 case regardless whether a "*pro se* litigant has mentioned it." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (internal quotation marks omitted). Still, *pro se* litigants must "allege sufficient facts" to support their claims. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (explaining "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants"). But the Court must "liberally construe" their pleadings. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *see also Bush v. City of Phila.*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005) (explaining "[c]ourts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally") (quoting *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004))).

III

A

The Court can summarily dismiss several of Rosado's claims at the outset. Rosado's first claim, which merely states § 1983's text, alleges no facts that could state a claim to relief. (Second Am. Compl. 14.) The same goes for claims nine through eleven, which are requests for attorneys' fees and damages. (*Id.* at 23–24.) Rosado's excessive force allegation against all defendants in claim eight fails because he does not contend there was an unreasonable use of force.[2] *See* (*id.* at 21–22). Rosado's fifth

---

[2] To prevail, Rosado must show there was a seizure that was objectively unreasonable under the Fourth Amendment. *Curley v. Klem*, 499 F.3d 199, 203 n.4, 206 (3d Cir. 2007) (quoting *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) and *Graham v. Connor*, 490 U.S. 386, 388 (1989)). Rosado does not allege any facts to show that either Dugan or Rawls used excessive force. Rosado alleges

claim is meritless for many reasons. His allegation that he was denied effective assistance of counsel is not cognizable under § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 324–25 (1981). The same is true for his perjury claim. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1467, n.16 (3d Cir. 1992) (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983)). The other allegations, for example that Dugan and Rawls tampered with evidence, are "legal conclusions" the Court may disregard. *Connelly*, 809 F.3d at 790.

Claims six and seven are also dismissed. Rosado seems to contend in claim six that he was deprived due process when his identification card was treated like a license under Pennsylvania's vehicle code. *See* (Second Am. Compl. 18–20); 75 PA. Stat. and Cons. Stat. § 1510 (West 2021). His allegations here are particularly hard to follow but do not begin to establish a procedural due process claim. *See Verdier v. Borough*, 796 F. Supp. 2d 606, 629 (E.D. Pa. 2011) (explaining plaintiffs must show a deprivation of an "individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property" and the available procedures "did not provide due process of law" (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006)) (internal quotation marks omitted)). Next, his allegation that Defendants violated the Driver's Privacy Protection Act fails because its permissible-use exception forecloses

---

that when Trooper Simcox pulled him over in December of 2018 he reached for his firearm and threatened to pull Rosado out of his car after Rosado did not comply with prior orders to step out himself. (Second Am. Compl. ¶¶ 47–49.) While courts have found police officers act objectively unreasonably when they point a gun at, or hold it to, someone, Rosado vaguely alleges Trooper Simcox only reached for his weapon. He has not "shown" he is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *cf. Merrill v. Schell*, 279 F. Supp. 3d 438, 444 (W.D.N.Y. 2017) (concluding there was a plausible excessive force claim when an officer pointed his firearm "within a few inches" of plaintiff's head and verbally threatened him while plaintiff was sitting in handcuffs in a police car and not resisting arrest); *McDonald by McDonald v. Haskins*, 966 F.2d 292, 295 (7th Cir. 1992) (concluding dismissal based on qualified immunity was not warranted when an officer held his gun to a nine-year old's head and threatened to pull the trigger, and the nine-year old was not a suspect).

7

liability. *See* 18 U.S.C. § 2721(b) (providing personal information can be disclosed "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions").

Many of Rosado's other allegations are nonsensical or unsupported by well-pleaded facts that could plausibly give rise to entitlement to relief. *See Iqbal*, 556 U.S. at 678. For example, he contends Pennsylvania's vehicle code is "not law" because it did not pass the U.S. Constitution's "quorum" requirement, that the Thirteenth Amendment does not "run both counter clock wise and retroactive," that the police defendants conspired to obstruct justice and that he was the victim of retaliatory conduct, denied equal protection, assaulted and battered and subjected to cruel and unusual punishment. (Emerg. Pet. 7–8); *see* (Second Am. Compl. 8–9, 15, 21–22).

B

1

Rosado's second claim is that Dugan and Rawls falsely arrested him on July 21, 2017. (Second Am. Compl. 14–16). To state a plausible claim, he must show he was arrested without probable cause. *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020). Probable cause means a "'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (explaining probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested" (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d. Cir. 1995))).

Rosado has, at this stage, alleged enough for his false arrest claim against Dugan to proceed to discovery. He asserts he was neither speeding nor failing to stay in his lane, Dugan's purported bases for pulling him over. (Second Am. Compl. ¶¶ 7–8.) He claims he was not under the influence of any intoxicants, that he passed repeated sobriety and breathalyzer tests and that, notwithstanding Dugan's claims to the contrary, no smell of marijuana emanated from his car or clothing. (*Id.* at ¶¶ 7–15.) Dugan arrested him for DUI anyway. (*Id.* at ¶ 15.) Taken as true for now, these facts could plausibly show Dugan lacked probable cause to stop and arrest him. *Cf. Brown v. Evans*, No. 21-651, 2021 WL 4973630, at *3 (D. Del. Oct. 25, 2021) (denying dismissal of a false arrest claim when plaintiff alleged officers "had no reason to believe that he had committed a crime"). Rosado's arrest allegations focus solely on Dugan, and any false arrest claim against Rawls is dismissed.[3]

---

[3] The PSP troopers argue Rosado's false arrest claims are time-barred. (Mot. to Dismiss. 7–10.) The Court can grant a motion to dismiss based on an affirmative defense, such as a statute of limitations, only if its predicate is "apparent *from the face of the complaint.*" *Brody v. Hankin*, 145 F. App'x 768, 771 (3d Cir. 2005) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978)) (emphasis in original); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007). Pennsylvania's two-year statute of limitations for personal injury torts applies to the false arrest claims. *See Pearson v. Sec. Dep't of Corr.*, 775 F.3d 598, 602 (3d Cir. 2015) (citing 42 PA. Stat. and Cons. Stat. § 5524 (West 2021)) (noting § 1983 claims are "governed by the statute of limitations that applies to personal injury tort claims in the state" the claim arises in). The claims accrue under federal law when the plaintiff was "detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 397 (2007).

Rosado filed his initial complaint on October 29, 2019, more than two years after his July 21, 2017 arrest and Dugan's filing of the affidavit of probable cause on August 1. (ECF 2; ECF 9 at ¶¶ 15, 32.) But the pleading does not state when any detention pursuant to legal process before his November 29, 2017 trial, such as a preliminary hearing or arraignment, took place. *Garvin v. Palmer*, No. 10-01294, 2018 WL 6303760, at *2 (E.D. Pa. Dec. 3, 2018) (citing these as examples); *Wallace*, 549 U.S. at 391 (concluding accrual on a § 1983 false arrest claim occurred when petitioner "appeared before the examining magistrate and was bound over for trial"). While Rosado claims he appeared in court "several" times before trial, he does not provide dates. (Second Am. Compl. ¶¶ 33, 35.) The PSP troopers' limitations defense is not apparent from the face of the Second Amended Complaint. *Brody*, 145 F. App'x at 771.

2

Rosado's third claim plausibly states against Rawls a Fourth Amendment violation for failure to intervene. (Second Am. Compl. 15–16.) To do so, Rosado must allege the "police officer failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge" and "there was a 'realistic and reasonable opportunity to intervene.'" *Bethea v. Delaware*, 17 F. Supp. 3d 407, 417 (D. Del. 2014) (quoting *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002)). A police officer faces § 1983 liability if he "witnesses unconstitutional conduct," such as a false arrest, but does not intervene. *Goldwire v. City of Phila.*, 130 F. Supp. 3d 936, 942, 942 n.1 (E.D. Pa. 2015) (explaining failure to intervene claims are not limited to the excessive force context).

Given Rosado claims Rawls was with Dugan during the stop and arrest, he alleges sufficient facts to show Rawls reasonably could have intervened on his behalf when Dugan allegedly falsely arrested him. *See* (Second Am. Compl. ¶¶ 4–6, 11–16); *Bethea*, 17 F. Supp. 3d at 417.

3

In claims four and eight, Rosado fails to plausibly allege that Dugan, Rawls or Trooper Simcox maliciously prosecuted him. *See* (Second Am. Compl. 16–18, 21–22). He contends Trooper Simcox pulled him over in December of 2018 to secure evidence for the prosecution of his July 2017 arrest conducted by Dugan and Rawls. *See* (*id.* at ¶¶ 46, 54). Rosado must show (1) defendants "initiated a criminal proceeding"; (2) it "ended in the plaintiff's favor"; (3) it "was initiated without probable cause"; (4) defendants "acted maliciously or for a purpose other than bringing the plaintiff to

justice"; and (5) plaintiff "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009). At minimum, Rosado cannot satisfy the fifth prong.

A malicious prosecution claim targets the "deprivation of liberty accompanying prosecution" rather than "prosecution itself." *See Dibella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005). The liberty deprivation must be based on the "prosecution, not the arrest" and "occur chronologically after the pressing of charges." *Bell v. Twp. of Chester*, No. 20-2849, 2021 WL 322774, at *2 (E.D. Pa. Feb. 1, 2021) (internal quotation marks omitted). What is relevant are the "conditions imposed after prosecution began." *Roberts v. Caesar's Ent., Inc.*, 72 F. Supp. 3d 575, 581 (E.D. Pa. 2014). A Fourth Amendment seizure in this context is either "[p]retrial custody" or "some onerous types of pretrial, non-custodial restrictions." *DiBella*, 407 F.3d at 603. "[A]ttending court proceedings" does not qualify. *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 660 (W.D. Pa. 2010).

Rosado alleges that after Dugan arrested him in July of 2017 he and Rawls took Rosado to the hospital for a chemical test, then brought him to the PSP barracks and released him twenty minutes later. *See* (Second Am. Compl. ¶¶ 16, 24–28). This transport and detention, prior to the filing of any charges, is not a deprivation of liberty. *See Bell*, 2021 WL 322774, at *2–*3 (concluding plaintiff did not allege a deprivation of liberty based on his "aggressive[]" placement in a police car, being "locked to a bench" at the police department and release with a citation).

Rosado also claims he made "several" court appearances before attending his trial. (Second Am. Compl. ¶¶ 33, 35.) Likewise, these pre-trial hearings, where Rosado

11

does not allege he was in custody or subject to any onerous restrictions, are not a liberty deprivation. *See Roberts*, 72 F. Supp. 3d at 581–82 (explaining that "[m]erely having to appear in court to answer charges" is not a Fourth Amendment seizure). The same is true for Rosado's appearance at trial. *See Dibella*, 407 F.3d at 603 (holding that attending trial is "not a government 'seizure'" for a § 1983 malicious prosecution claim and explaining the "Fourth Amendment does not extend beyond the period of pretrial restrictions"). The same logic forecloses any claim to a liberty deprivation based on hearings that followed the subsequent reinstatement of charges. (Second Am. Compl. ¶¶ 37, 40–41.)

Rosado also alleges that in December of 2018 Trooper Simcox pulled him over, issued him a citation and allowed him to drive away. (*Id.* at ¶¶ 46, 51.) This stop does not rise to a deprivation of Rosado's liberty. *See Bell*, 2021 WL 322774, at *2. Nor does the resulting preliminary hearing. *See Basile*, 752 F. Supp 2d. at 660; *cf. Roberts*, 72 F. Supp. 3d at 580, 582 (finding no deprivation of liberty when plaintiffs were arrested and held in a cell at the police station, brought before a magisterial district justice, released from their initial appearance on the condition they not leave Pennsylvania without permission and required to attend "numerous" pre-trial hearings).

IV

The Court need not allow Rosado to amend his Complaint a third time because at this point amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Court applies "the same standard of legal

12

sufficiency that applies under Rule 12(b)(6)" to assess futility. *Id.*; *see also Jones v. Unknown*, 944 F.3d 478, 483 (3d Cir. 2019) (finding *pro se* litigant's amendment of § 1983 claims would be futile because "he has already had two chances to tell his story"). It also denies leave because of Rosado's "repeated failure to cure deficiencies by amendments previously allowed." *Foman*, 371 U.S. at 182. Rosado's initial and amended Complaints did not comply with Rule 8, and he largely ignored the Court's guidance for curing their deficiencies, even in his Second Amended Complaint.

    An appropriate Order follows.

BY THE COURT:


 */s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.