IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERONIMO F. ROSADO, JR., *Plaintiff,* v. MICHAEL P. DUGAN, et al., *Defendants.* | CIVIL ACTION NO. 19-5068 |

**PAPPERT, J.**                                             September 1, 2022

**MEMORANDUM**

*Pro se* Plaintiff Geronimo (also known as Jeronimo) Rosado sued Pennsylvania State Police Corporal Michael Dugan and Trooper Reginald Rawls for their roles in a July 2017 traffic stop. Rosado alleges Dugan arrested him without probable cause for driving under the influence of marijuana and Rawls failed to intervene during the arrest. The parties have all moved for summary judgment. After reviewing their submissions and the record, including mobile video recorder footage of the stop and arrest, the Court grants Dugan and Rawls's Motion, denies Rosado's Motion and enters judgment for Dugan and Rawls. While there are disputed material facts as to whether Dugan had probable cause to arrest Rosado for DUI, the officers are entitled to qualified immunity.

I

A

On the night of July 21, 2017, Rosado and his date, Shelly Smith, went to Parx Casino in Bensalem, Pennsylvania. (Second Am. Compl. 3, ECF 9.) After they left,

1

Smith said she didn't feel well enough to drive her car because of the medication she took. (*Id.*) She demanded that Rosado drive even though he had a suspended license and was on state parole, and he agreed. (*Id.*; Ct. Com. Pleas Order n.1, Defs' Ex. 6, ECF 48-6.)

At approximately 12:45 a.m., Dugan and Rawls were patrolling Route 202 in Chester County when they saw Rosado pull onto the highway from Route 29. (MVR Stream 1 at :13–:27, Defs' Ex. 7, ECF 48-7.) After moving from the right to the center lane, Rosado briefly moved into the left lane then returned to the center lane. (*Id.* at :40–:50.) He then drove 70 miles per hour in a 45-mph construction zone for roughly a third of a mile. (PSP Incident Rep. 4, Defs' Ex. 1, ECF 48-1.) Dugan pulled Rosado over approximately five minutes after he entered Route 202. (MVR Stream 1 at :15–5:15.)

Dugan approached the driver side of Smith's car, Rawls the passenger side. (*Id.* at 5:35–6:18.) Rosado told Dugan he didn't drink any alcohol that night (or early morning). (*Id.* at 7:43–48, 13:15–18, 14:18–20.) He later took a breathalyzer test, which did not detect alcohol. (*Id.* at 24:41–27:33, 28:26–33.)

After briefly returning to his squad car, Dugan walked back to Smith's car and told Rosado he pulled him over because he "flew off" the onramp to Route 202, failed to maintain his lane and was speeding. (*Id.* at 10:27–11:05.) Rosado, who suffers from an eye condition called keratoconus, responded that he can't see well and is legally blind. (*Id.* at 10:34–35, 11:11–12, 13:35–41); *see also* (ECF 46-4 at 6–16).[1]

---

[1]  The Court uses only ECF numbers to cite Rosado's briefs, memoranda and exhibits.

Dugan said there was a strong marijuana odor coming from Rosado's clothes and the car, and asked Rosado the last time he smoked it. (MVR Stream 1 at 11:13–34, 22:44–47.) Dugan was trained to assess drivers' marijuana use, including sobriety testing and impaired driving enforcement. (Dugan Aff. ¶ 7, Defs' Ex. 2, ECF 48-2.)

Rosado admitted he smoked marijuana "earlier this afternoon" and that he was wearing the same clothes. (MVR Stream 1 at 11:42–52, 14:29–32.) He later told Dugan, however, that he last smoked marijuana at "ten, eleven," which Dugan took to mean 10 or 11 am. (*Id.* at 12:51–13:13; PSP Incident Rep. 4.) Rosado also said he generally smokes marijuana "very occasionally." (MVR Stream 1 at 14:21–26.) Smith said she doesn't smoke marijuana. (*Id.* at 11:52–55.)

Dugan subsequently asked Rosado to step out of the car and told him his pupils were "extremely dilated," which Rosado attributed to his eye condition. *See* (*id.* at 12:05–09, 13:19–14:18); *see also* (ECF 54-3 at 8; ECF 54-7 ¶ 11). Dugan then led Rosado through a series of sobriety tests. (MVR Stream 1 at 14:40–22:15.) According to Dugan and Rawls, Rosado showed "signs of impairment." (*Id.* at 22:27–54, 24:11–13; MVR Stream 2 at 23:09–24:06, Defs' Ex. 7, ECF 48-7; PSP Incident Rep. 4.) Dugan explained marijuana can impair the user for up to twenty-four hours. (MVR Stream 1 at 24:18–24.) He then arrested Rosado for driving under the influence of a controlled substance. (*Id.* at 27:50–28:46.)

Dugan took Rosado to Chester County Hospital for a blood test, to which Rosado refused to consent. (*Id.* at 30:44–57, 35:19–21; MVR Stream 2 at 7:17–11:42; Blood Test Refusal, Defs' Ex. 8, ECF 48-8.) A doctor who saw Rosado later that evening found he was "alert" and "not intoxicated." (ECF 46-2 at 13.)

3

B

On December 13, 2017, Dugan filed a criminal complaint, with an accompanying affidavit of probable cause, charging Rosado for, among other things, driving with a suspended license, careless driving, failing to maintain his lane, speeding and DUI. (Crim. Compl., Defs' Ex. 9, ECF 48-9.)  Rosado subsequently moved to suppress evidence obtained during the arrest. (Ct. Com. Pleas Order.)  On April 24, 2019, after holding two hearings at which Dugan and Rosado testified, Chester County Common Pleas Court Judge David Bortner granted Rosado's motion. (*Id.*)  The judge concluded Dugan had probable cause to pull Rosado over for driving 70 mph through the construction zone and that, even without that zone, he was driving 15 mph faster than the posted speed limit. (*Id.* at n.1.)  But the Court determined Dugan lacked probable cause to arrest Rosado for DUI, based largely on its interpretation of the MVR footage of the sobriety tests. (*Id.*)  Roughly eleven weeks later, the remaining charges were *nolle prossed*. (Defs' Ex. 11, ECF 48-11.)

On July 22, 2020, Rosado filed his Second Amended Complaint. (ECF 9.)  It asserted eleven claims against Dugan, Rawls two other police officers and the former Pennsylvania transportation secretary. (*Id.* at 13–23.)  Dugan, Rawls and one other officer moved to dismiss Rosado's claims against them, and the Court granted the motion with prejudice except as to his false arrest claim against Dugan and failure to intervene claim against Rawls. (ECF 18, 33–34.)

II

Summary judgment is proper if the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  A fact is material if it might affect the case's outcome under the

governing law, and a genuine dispute exists if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence supporting the nonmovant will not suffice; rather, to avoid summary judgment, he must set forth specific facts showing there is a genuine trial issue and cannot rest on pleadings. *Id.* at 252, 256. While a court must liberally construe a *pro se* plaintiff's complaint and apply applicable law regardless whether he names it, such a plaintiff still faces the "formidable task" of producing evidence sufficient to create a genuine dispute for trial (or show there are no such disputes). *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992).

A court can consider any material in the record that may be admissible at trial, and must view facts in the light most favorable to the nonmovant and draw all inferences in his favor. *See* Fed. R. Civ. P. 56(c)(2); *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). But the court need not credit mere suspicions, conclusory allegations or unsupported assertions. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). Additionally, the court cannot make credibility determinations or weigh the evidence. *See Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016). The standard is no different for cross-motions for summary judgment, which the court must decide on a separate and individual basis. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008); *Beneficial Mut. Sav. Bank v. Stewart Title. Guar. Co.*, 36 F. Supp. 3d 537, 544 (E.D. Pa. 2014).

Section 1983 of Title 42 of the United States Code provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or

Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." To establish a § 1983 claim, a plaintiff must show a violation of a right protected by the Constitution or federal law committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).

### III

Again, Rosado alleges Dugan falsely arrested him and Rawls failed to intervene during the arrest. None of Rosado's other allegations are relevant, and the Court will not address them. *See* (Jan. 3, 2022 Mem. & Order, ECF 31–32; Jan. 11, 2022 Mem. & Order, ECF 33–34).

### A

#### 1

A traffic stop complies with the Fourth Amendment if it is based on "reasonable suspicion" of criminal activity. *United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006); *see also Terry v. Ohio*, 392 U.S. 1 (1968). Reasonable suspicion exists when an officer objectively had specific, articulable facts that the driver was violating a traffic law when he stopped him. *Delfin-Colina*, 464 F.3d at 398. This standard is less demanding than probable cause and considerably less demanding than preponderance of the evidence, requiring only a "minimal level of objective justification" for conducting the stop. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

Moreover, a false arrest is one made without probable cause. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). Probable cause is a "fair probability" the

person to be arrested committed or is committing a crime, such as DUI. *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). The officer determines whether probable cause exists by reasonably assessing the facts he knows when he arrests the suspect. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Apart from those facts, the officer's state of mind is irrelevant. *Id.* at 153. Finally, like reasonable suspicion, probable cause depends on the totality of the circumstances. *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016); *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012).

Whether there was probable cause for an arrest in a § 1983 damages claim generally is a jury question. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000). The Court can grant summary judgment for Rosado only if no reasonable jury could find Dugan had probable cause to arrest him for DUI and for Dugan only if no reasonable jury could find he didn't have probable cause. *See Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020).

2

Dugan had probable cause to pull Rosado over. *See Wilson*, 212 F.3d at 791. He observed Rosado going 70 mph in a 45-mph construction zone for roughly a third of a mile, in violation of 75 Pa. Stat. and Cons. Stat. § 3362(a)(3). (PSP Incident Rep. 4.) Indeed, Rosado would have been speeding in the absence of the construction zone; the posted speed limit was 55 mph. (Ct. Com. Pleas Order n.1.) And if it is undisputed that Dugan had probable cause to stop Rosado, he necessarily had reasonable suspicion to do so. *See Wardlow*, 528 U.S. at 123. The Court need not address any of Dugan's other purported bases for pulling Rosado over.

There are, however, disputed factual issues as to whether Dugan had probable cause to arrest Rosado for DUI.  Pennsylvania law prohibits people from driving a car while under the influence of a drug, such as marijuana, to a degree that it impairs his ability to do so safely.  75 Pa. Stat. and Cons. Stat. § 3802(d)(2).  Whether probable cause existed depends on what Dugan knew when he arrested Rosado.  *See Devenpeck*, 543 U.S. at 152.

Dugan smelled a strong marijuana odor from Rosado's clothes and Smith's car.  (MVR Stream 1 at 11:13–34, 22:44–47.)  Rosado told Dugan he last smoked marijuana roughly fourteen hours earlier, and Dugan knew marijuana can impair drivers for longer than that.  *See* (*id.* at 12:51–13:13, 24:18–24; PSP Incident Rep. 4).  Additionally, Rosado's pupils were "extremely" dilated, something that Rosado did not dispute, but rather attributed to an eye condition.  (MVR Stream 1 at 13:19–14:18.)  Finally, according to Dugan and arguably the video itself, Rosado showed signs of impairment while performing sobriety tests.  (*Id.* at 22:27–54.)  Consequently, a reasonable jury could find Dugan had probable cause for the arrest.

But a reasonable jury could also conclude otherwise.  The state court did so after watching the video.  (Ct. Com. Pleas Order.)[2]  That Rosado admitted to smoking an unspecified amount of marijuana approximately fourteen hours earlier—and apparently still smelled like it—does not necessarily mean his ability to safely drive

---

[2]   Rosado does not argue the state court's judgment precludes Dugan from arguing he had probable cause.  *Cf. Sarin v. Magee*, 284 F. Supp. 3d 736 (E.D. Pa. 2018).  *Res judicata*—broadly understood to include collateral estoppel, or issue preclusion—is an affirmative defense under Federal Rule of Civil Procedure 8(c).  *Allen v. McCurry*, 449 U.S. 90, 94 n.5 (1980); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984).  Rosado waived it.  *See EEOC v. United States Steel Corp.*, 921 F.2d 489, 491 n.2 (3d Cir. 1990).  In any event, whether to apply collateral estoppel would be within the Court's broad discretion.  *See Smith v. Holtz*, 210 F.3d 186, 199 n.18 (3d Cir. 2000).

8

was impaired. *See* 75 Pa. Stat. and Cons. Stat. § 3802(d)(2). Moreover, Rosado told Dugan about his eye condition and explained how it could cause his pupils to dilate. *See* (MVR Stream 1 at 13:19–14:18).

The Court watched the video of the sobriety tests several times and cannot say reasonable jurors could only interpret it in Dugan's favor. *See Scott v. Harris*, 550 U.S. 372, 381 (2007); *see also* (Ct. Com. Pleas Order n.1). For example, Dugan concluded Rosado looked impaired during the "one-leg stand" test. (PSP Incident Rep. 4.) Rosado began counting out seconds incorrectly. (MVR Stream 1 at 19:14–21.) He also lost his balance and lowered his right leg while seeking clarification from Dugan on the instructions. *See* (*id.* at 19:20–28). But Rosado otherwise maintained his balance and counted out seconds as instructed. *See* (*id.*).

Lastly, to prevail on his failure to intervene claim, Rosado must establish Rawls failed to intervene when the allegedly false arrest occurred in his presence. *See Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002). The factual disputes preventing summary judgment on the false arrest claim against Dugan preclude summary judgment on the failure to intervene claim against Rawls.

B

1

Whether or not Dugan had probable cause to arrest Rosado, he and Rawls are entitled to qualified immunity. State police officers do not face damages liability unless they violate "clearly established" constitutional or statutory rights a reasonable person would have known about. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If the law didn't put the officer on notice that he was clearly acting unlawfully, the court should

grant summary judgment. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Qualified immunity applies to mistakes in judgment, whether of fact or law, and protects all but those who are plainly incompetent or knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Pearson v. Callahan*, 555 U.S. 223, 815 (2009).

In particular, an officer is protected by qualified immunity unless the plaintiff demonstrates (1) the violation of a constitutional right and (2) the right was clearly established when the officer allegedly violated it. *Jefferson v. Lias*, 21 F.4th 74, 80 (3d Cir. 2021). The Court can address these prongs in any order and need not address both if the plaintiff makes an insufficient showing on one. *Camreta v. Greene*, 563 U.S. 692, 705 (2011).

To determine whether a constitutional right was clearly established, a court must first define the right in light of the case's particular context, not at a high level of generality. *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015); *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). This specificity is especially important in false arrest cases because probable cause is a fluid concept that depends on assessing probabilities in specific factual contexts and is not defined by bright-line rules. *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam); *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

Second, the court must ask whether the right's contours were sufficiently clear that every reasonable officer would understand he was violating it in his situation. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Dennis v. City of Phila*, 19 F.4th 279, 288 (3d Cir. 2021). While there need not be a case directly on point, precedent—that is, controlling authority or a consensus of persuasive authority—must place the

constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 719 (3d Cir. 2018). The only exception is for rare, obvious cases where the unlawfulness of the officer's conduct is clear even without precedent on similar facts. *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018); *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam).

2

Again, a reasonable jury could go either way on whether Dugan and Rawls violated Rosado's Fourth Amendment rights. *See supra* Section III.A. But even if Dugan lacked probable cause for the arrest, Rosado's rights were not clearly established when the arrest took place. *See Jefferson*, 21 F.4th at 80.

The Court must first define Rosado's rights in light of this case's facts. *See Spady*, 800 F.3d at 638. In doing so, it must focus on the specific circumstances in which Dugan arrested Rosado. *See Wesby*, 138 S. Ct. at 590; *see also Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 173 (3d Cir. 2017).

At the time of the arrest, Dugan smelled a strong marijuana scent coming from Rosado's clothes and Smith's car. (MVR Stream 1 at 11:13–34, 22:44–47.) Rosado told Dugan he smoked marijuana, while wearing the same clothes, earlier that day, and Dugan knew marijuana can impair drivers for up to twenty-four hours. (*Id.* at 12:51–13:13, 24:18–24; PSP Incident Rep. 4.) Merely smoking an unknown amount of marijuana, however, did not necessarily impair Rosado's capacity to drive safely. *See* 75 Pa. Stat. and Cons. Stat. § 3802(d)(2). Moreover, Rosado's pupils were extremely dilated, something he attributed to his eye condition. (MVR Stream 1 at 13:19–14:18.) While the Court cannot definitively say a jury would agree, Dugan had a reasonable

11

basis for concluding Rosado appeared impaired when performing the sobriety tests. *See, e.g.*, (*id.* at 19:14–47 (one-leg stand test)).

Accordingly, the right at issue is a suspect's Fourth Amendment right to not be arrested for DUI when he admits to recently using a drug, has dilated pupils and arguably shows signs of impairment during sobriety tests. *Cf. Wilson v. Jean*, 145 F. Supp. 3d 434, 437–38 (E.D. Pa. 2015). Defining the right at this level of specificity is especially important given probable cause's malleable and fact-bound nature. *See Mullenix*, 577 U.S. at 12; *Gates*, 462 U.S. at 232.

Next, the Court must ask whether this right's contours were sufficiently clear when Dugan arrested Rosado that every reasonable officer would understand he was acting unlawfully. *See Anderson*, 483 U.S. at 640; *see also Mammaro v. New Jersey Div. of Child Protection & Pharmacy*, 814 F.3d 164, 169 (3d Cir. 2016). Precedent must have placed beyond debate that Dugan lacked probable cause to arrest Rosado. *See al-Kidd*, 563 U.S. at 741.

Rosado's Fourth Amendment right, as defined by the Court, was not clearly established when Dugan arrested him. *See, e.g.*, *Fitzgerald v. Cnty. of Lehigh*, 381 F. Supp. 3d 443, 458–59 (E.D. Pa. 2019). As an initial matter, this is not one of the rare, obvious cases where the unlawfulness of the officer's conduct is clear absent relevant precedent. *See Wesby*, 138 S. Ct. at 590. Further, Rosado points to no case—and the Court is aware of none—where an officer violated the Fourth Amendment by falsely arresting a suspect in similar circumstances. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam).

Ultimately, Dugan evaluated the facts before him and made a judgment call for which he had a reasonable basis. *See Pearson*, 555 U.S. at 815; *Blaylock v. City of Phila.*, 504 F.3d 405, 411 (3d Cir. 2007). He was not "plainly incompetent," nor did he knowingly violate the law. *See Malley*, 475 U.S. at 341. And since the failure to intervene claim against Rawls hinges on the false arrest claim against Dugan, Rawls is also entitled to qualified immunity. *See Williams v. City of York*, 967 F.3d 252, 257–58 (3d Cir. 2020).

An appropriate Order follows.

BY THE COURT:

/s/ Gerald J. Pappert
GERALD J. PAPPERT, J.